UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT MEDICAL CENTER and RAINBOW
REHABILITATION CENTERS, INC.,

                                Case No. 09-14821

            Plaintiffs,                Honorable David M. Lawson

v.

ENCOMPASS INSURANCE CO. and
PHILADELPHIA INSURANCE CO.,

            Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

When Kevin Ellison was hit by a car in 2009, a dispute arose over who should be responsible for his medical bills. The car that hit Ellison was insured by defendant Encompass Insurance Company, and the plaintiffs submitted their bills for medical treatment to Encompass, which did not promptly pay them. The parties discovered later that the group home where Ellison resided was insured by defendant Philadelphia Insurance Company, which ultimately bore primary responsibility for Ellison's medical expenses. There was delay in payment by Philadelphia as well, however, and the plaintiffs filed suit to recover their expenses. Philadelphia eventually paid the medical expenses in full. The dispute that remains in the present case is over penalty interest and attorney's fees that are owed under Michigan's no-fault insurance act when claims are not paid promptly after the insurance company has reasonable proof of the fact and amount of the loss. The parties have filed cross motions for summary judgment, which were submitted after oral argument on December 6, 2010 and supplemental briefs were filed. The Court now finds that the plaintiffs are entitled to

payment of interest and attorney's fees from both defendants in the proportionate shares outlined below.

## I.

Under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101 *et seq.*, a covered person is entitled to payment of all reasonable medical expenses incurred for accidental injuries arising out of the use of a motor vehicle, regardless of fault. Mich. Comp. Laws § 500.3105(1). A pedestrian struck by a motor vehicle falls within the category of persons injured by the "use of a motor vehicle" and is entitled to payment of those expenses. *Esquivel v. American Fid. Fire Ins. Co.*, 90 Mich. App. 56, 58-59, 282 N.W.2d 240, 241-42 (1979). If the pedestrian or someone in his household has his own no-fault insurance policy, he may recover those expenses from that insurer, even though he was not operating a vehicle at the time of his injury. Mich. Comp. Laws § 500.3114(1); *Madar v. League Gen. Ins. Co.*, 152 Mich. App. 734, 738-39, 394 N.W.2d 90, 92 (1986). If no such coverage is available to the injured pedestrian from his or a household member's own policy, then the pedestrian may recover his expenses from the insurer of the vehicle that struck him. Mich. Comp. Laws § 500.3115(1)(a). Medical expenses are included in the package of statutory benefits under the rubric of "personal injury protection," or "PIP," benefits.

The underlying accident precipitating this case occurred on March 16, 2009 and involved Kevin Ellison, a 26-year-old resident of the K&K group home in Westland, Michigan. Ellison was hit by a car during an attempt to run away from K&K. K&K is a subsidiary of Attitude Recovery Center, an organization having premises and automobile insurance with defendant Philadelphia Insurance Company. Before the accident, Ellison suffered from long-standing mental health conditions, took several anti-psychotic and mood stabilizing medications, and had the cognitive

capacity of a six or seven year old. Although Ellison was a full-time resident at K&K, occasionally he lived with his mother and legal guardian, Vanessa Ellison, who did not have any automobile insurance.

As a result of the accident, Ellison broke his right leg, exposing the bone. He was transported that day to Detroit Receiving Hospital, an affiliate of the Detroit Medical Center (DMC), one of the plaintiffs, where he remained hospitalized for four weeks. He underwent multiple surgeries and wound debridement procedures. On April 13, 2009, Ellison was discharged to the Rehabilitation Institute of Michigan (RIM), another DMC affiliate, and Rainbow Rehabilitation Center (Rainbow), the other plaintiff, for therapeutic and rehabilitative services. He remained at RIM until April 29, 2009 and was discharged with orders to continue physical and occupational therapy at Rainbow.

At Rainbow, Ellison received physical therapy five times a week and participated in group occupational therapy sessions twice a week. He was discharged from Rainbow to a series of third-party rehabilitation institutions on June 11, 2009, after some disruptive behavior that required emergency hospitalization for sedation.

The car that struck Ellison was insured by defendant Encompass, who the plaintiffs believed was the highest priority insurer; Ellison was not "domiciled in the same household" as his mother, so he was not covered under his mother's no-fault policy. *See* Mich. Comp. Laws § 500.3114(1). The plaintiffs sought benefits from Encompass shortly after the accident, first contacting that insurer on April 6, 2009. Apparently, Encompass believed it was liable for the medical expenses, since an adjuster note dated April 6, 2009 states that "the PIP would come from our insured's policy. We will be affording primary medical as Kevin's health insurance is Medicaid." Pl.'s Mot. Summ. J.,

-3-

Ex. A, Encompass Claim File, 4/6/09 notes.  The plaintiffs allege that they sent Encompass over two hundred pages of medical records, including the medical records from each facility and bills for treatment.  They sent additional information about medical treatment on May 15, June 2, and June 26.  No payment was forthcoming.

On April 8, 2009, Encompass hired outside case manager Patricia Santer of Vinic Medical Consulting to follow Ellison's case.  Santer supplied Encompass with case management reports and medical records that documented the victim's continued but decreasing need for therapy and supervision and the subsequent need for daily wound care at a later stage of recovery.

The case file notes indicate continual increases of the reserve on the claim file.  The April 14, 2009 notes suggest that the current bills should be addressed and that "MCCA" — the Michigan Catastrophic Claims Association — should be notified.  However, no payments actually were made to the plaintiffs.  Encompass continued to accept bills and process the claim throughout the year and into September, but it never made any payments.

The first indication of a potential priority dispute appears in the June 4, 2009 note in Encompass's claim file.  However, there is little evidence that the company did much to investigate the possibility of another insurer over the next several months, and the adjuster wrote that she would honor the bills.  No payments to the plaintiffs were made, however.  On July 2, 2009, Encompass's counsel sent a letter to K&K that referenced conversations during the prior month and made a second request for K&K's insurance policy.  The record does not indicate if and when Encompass received this policy.  There are no further references to a priority investigation until September 24, 2009; the claim file merely indicates that the priority question has not been resolved.

-4-

In September 2009, having received no payments, the plaintiffs retained counsel. Plaintiffs' counsel had several conversations with counsel for Encompass, who indicated that Encompass was "investigating the matter" and attempting to obtain K&K's insurance policy to determine priority, with which he hoped to have plaintiffs' counsel's assistance. Plaintiffs' counsel did not tell Encompass that he would try to obtain K&K's insurance policy, but he did make additional requests for payment, despite the potential priority dispute. Encompass did not tender any payments.

On October 13, 2009, plaintiffs' counsel also began to investigate the existence of a potential higher-priority insurer and called the McDonnell Agency, K&K's insurance agent. It appears that Encompass's counsel also made efforts to contact McDonnell, but no coverage information was forthcoming. Nonetheless, McDonnell forwarded the claim to Philadelphia Insurance Company, K&K's parent organization's insurer, but McDonnell did not inform the plaintiffs of that action. Philadelphia opened a claim file on October 14, 2009. The adjuster notes from that date indicate a brewing priority dispute with the suggestion that the company insuring the vehicle in the accident should be responsible for payment of the benefits. The claim file evidences some investigation in October and November related to potential coverage and liability issues.

On October 29, 2009, having not received payment from Encompass, the plaintiffs filed a complaint against Encompass in the Wayne County, Michigan circuit court and served Encompass on November 13, 2009. On December 11, 2009, Encompass removed the case to this Court.

On December 15, 2009, the plaintiffs followed up with the McDonnell agency and learned that their claim had been turned over to Philadelphia. The plaintiffs assert that they made that discovery through their own investigation and notified Encompass, but Encompass contends that it was the one to discover Philadelphia's identity. On that same day, the plaintiffs submitted several

-5-

dozen pages of bills and medical records to Philadelphia and informed the assigned examiner of their claim by telephone. Encompass contacted the assigned examiner on December 16, 2010 to obtain a copy of Philadelphia's insurance policy. Philadelphia's December 21, 2010 claim notes indicate an awareness of the pending litigation between the plaintiffs and Encompass and the fact the Philadelphia was not a party to the suit. The plaintiffs did not receive a copy of Philadelphia's insurance policy until January 20, 2010.

The plaintiffs filed an amended complaint in the present action on January 19, 2010 joining Philadelphia as an additional defendant, and later filed a second amended complaint pursuant to the parties' stipulation on April 27, 2010.

Philadelphia acknowledges that it did not begin an investigation of the claim until after it was added as a party to the lawsuit. At that time, the claim file was transferred to a different claims examiner, who apparently did not review the file notes made by the previous examiner but did review the documents that the plaintiffs had submitted. Philadelphia says that the priority portion of its investigation was fact-intensive and time consuming, involving questions of residency, whether Ellison was a ward, whether K&K was included under Attitude Recovery Center's policy, and whether a higher priority insurer existed. On April 15, 2010, Philadelphia submitted the information it discovered to MCN, a third-party reviewer, according to its standard practice. MCN approved nearly all of the charges. Philadelphia received additional medical records on May 6, 2010.

On February 11, 2010, plaintiffs' counsel initiated a claim with the Michigan Assigned Claims Facility (ACF), which was received by ACF on February 17, 2010. ACF opened a case file on February 23, 2010, noting that plaintiffs' counsel had provided an "incomplete application and

a police report." The file was closed when the parties resolved the priority issue outside of the ACF forum.

On February 25, 2010, counsel for Philadelphia admitted at a status conference in court that it was probably the highest priority insurer and later provided the plaintiffs with a written admission of that fact on April 26, 2010. On July 6, 2010, Philadelphia admitted in response to the plaintiffs' second set of requests for admission that the documents the plaintiffs had submitted in their initial claim "constitute[d] reasonable proof of the fact and amount of loss from Plaintiff DMC for products, services, and accommodations provided to Kevin Ellison." Pl.'s Mot. Summ. J. at 5 n.8 & Ex. H, Phila. Resp. to Pl.'s Second Request for Admissions ¶ 4.

On July 28, 2010, Philadelphia issued payment to the plaintiffs for most of the plaintiffs' outstanding bills and tendered the balance on August 6, 2010.

In August 2010, the parties filed their cross motions for summary judgment. Because the medical bills finally had been paid, the only issue remaining was whether either insurer was liable to pay delay damages, that is, penalty interest and attorney's fees allowable under the no-fault act when a properly documented claim is not paid promptly. As discussed in detail below, a no-fault insurer must pay penalty interest if its PIP payments to a claimant are "overdue," as that term is defined by Michigan law. It must pay the claimant's attorney's fees if the payments are overdue and the refusal to pay or the delay in payment is unreasonable.

The parties have filed cross motions for summary judgment on those two issues. Defendant Philadelphia does not dispute its statutory obligation to pay the plaintiffs their charges for medical services for providing care and treatment to Kevin Ellison. Philadelphia insists that its payments were not overdue because the plaintiffs never submitted reasonable proof of the fact and amount of

the loss.  Defendant Encompass contends that it had no obligation to pay the plaintiffs' charges because it was a lower priority insurer.  Encompass argues that it cannot be responsible for penalty interest and attorney's fees for the same reason asserted by Philadelphia: the plaintiffs' submissions were not adequate to trigger its obligation to pay under Michigan law.  The plaintiffs contend that their earliest submissions were sufficient to inform the insurers of the fact and amount of the loss, and the delay in payments, caused primarily by a dispute between insurance companies over priority, rendered the payments unreasonably overdue, subjecting both insurers to penalty interest and attorney's fees.

II.

The standards for evaluating a motion for summary judgment are well known but bear repeating here.  As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b).  Such a motion presumes the absence of a genuine issue of material fact for trial.  The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).  Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).  In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus,

-8-

the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Refining, LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

This case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the plaintiffs' claim is based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data includes the state's

-9-

intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotation marks and citation omitted).

"The primary goal of the [Michigan] no-fault act is 'to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.'" *McCormick v. Carrier*, 487 Mich. 180, 234, 795 N.W.2d 517, 547 (2010) (quoting *Shavers v. Attorney Gen.*, 402 Mich. 554, 578–579, 267 N.W.2d 72, 77 (1978). Under the Michigan no-fault system, automobile accident victims are entitled to prompt payment of certain personal injury protection benefits as soon as "the loss accrues." Mich. Comp. Laws § 500.3142(1). The injured person must support a claim for benefits with "reasonable proof of the fact and of the amount of loss sustained." *Id.* § 500.3142(2). PIP benefits not paid by an insurer within 30 days after receiving such proof are deemed "overdue." *Ibid.* "An overdue payment bears simple interest at the rate of 12% per annum." *Id.* at § 500.3142(3).

Similarly to encourage prompt payment of PIP benefits, if an automobile accident victim is required to hire a lawyer to collect overdue benefits, the insurer must pay a "reasonable fee" to the lawyer "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Mich. Comp. Laws § 500.3148(1).

Although the no-fault statutes confer the right to recover PIP benefits upon the accident victim, Michigan courts have determined that health care providers have an independent right of action against an insurer to enforce payment of expenses for PIP benefits that includes the right to collect penalty interest and attorney's fees for overdue payments unreasonably withheld. *See*

-10-

*Lakeland Neurocare Ctrs. v. State Farm Mut. Auto. Ins. Co.*, 250 Mich. App. 35, 39-41, 645 N.W.2d 59, 62-63 (2002).

### A. Penalty Interest

As mentioned above, an insurer must pay penalty interest at the annual rate of 12% on PIP benefit payments that are "overdue." The defendants contend that PIP payments cannot become due until the claimant proves that he is entitled to payments under the no-fault law, which in turn requires proof that the amount claimed is an "allowable expense" under Michigan Compiled Laws § 500.3107(1)(a). It is true that a PIP claimant, to recover medical expense payments, must prove that the charge for the medical service was reasonable, the expense was reasonably necessary for the claimant's care or treatment, and the expense was actually incurred. *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 50, 457 N.W.2d 637, 645 (1990); *see also Shanafelt v. Allstate Ins. Co.*, 217 Mich. App. 625, 637, 552 N.W.2d 671, 676 (1996). The defendants reason that unless a claimant submits to the insurer proof that satisfies these three elements, the claimant has not submitted "reasonable proof" of the loss within the meaning of Michigan Compiled Laws § 500.3142(1), and the insurer's obligation to pay has not been triggered. Based on this reasoning, the defendants argue that the plaintiffs' voluminous submissions did not constitute "reasonable proof" of the amount of PIP benefits claimed because the defendants could not determine from the documentation whether the medical expenses constituted reasonable charges or that the services were reasonably necessary for the care and treatment of Kevin Ellison's accident-related injuries.

The flaw in the defendants' argument stems from their confounding the elements of a PIP claim with the insurer's obligation to pay benefits promptly. Those concepts are treated as distinct by Michigan courts.

Section 3142(2) states: "Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. . . ." "Reasonable proof" has never been equated with the quantum of evidence necessary to satisfy a legal claim under section 3107(1). To the contrary, section 3142(1) "requires only *reasonable* proof of the amount of loss, not exact proof." *Williams v. AAA Mich.*, 250 Mich. App. 249, 267, 646 N.W.2d 476, 485 (2002). Of course, in addition to the fact of the loss, the claimant must submit reasonable proof of the amount as well. *See Regents of Univ. of Mich. v. State Farm Mut. Ins. Co.*, 250 Mich. App. 719, 735-36, 650 N.W.2d 129, 138 (2002). But when reasonable proof of the loss and the amount of the claimed benefit has been received, the insurance company has a duty to investigate on its own and tell the claimant what it believes is lacking. *Williams*, 250 Mich. App. at 267, 646 N.W.2d at 485 (stating that if the insurance company, after receiving notification of the amount of loss, "had desired to challenge or investigate the amount [claimed], could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed"); *see also Borgess Med. Ctr. v. Resto*, 273 Mich. App. 558, 579, 730 N.W.2d 738, 750 (2007), *opinion vacated, concurrence & judgment aff'd*, 482 Mich. 946, 754 N.W.2d 321 (2008) ("Once a claimant provides reasonable proof of the fact and amount of the loss, the insurer has a duty to conduct its own investigation into the reasonableness and necessity of the charges and ask for what it deems lacking.").

That point was brought home by the Michigan Supreme Court in *Nassar*. In that case, the court held that an insurance company is entitled to require the claimant to prove the elements of a PIP claim, at a jury trial if demanded, before being legally obligated to pay those benefits. But "[a]n insurer still runs the risk of sanctions under § 3142 of the act if its liability ultimately is established

-12-

and payments are found to be overdue, a risk which subjects it to an even greater rate of interest on overdue payments if both § 3142 interest and postcomplaint interest . . . are awarded." *Nasser*, 435 Mich. at 56-57, 457 N.W.2d at 648.

The plaintiffs submitted their bills and copious medical records to defendant Encompass on April 6, 2009. Encompass does not dispute that it received approximately 85 pages of the victim's medical records at each of the plaintiff treating facilities, which detail the different surgeries, procedures, rehabilitative, and therapeutic treatments he received, and itemized bills detailing the amounts owed. The plaintiffs provided those same documents to Philadelphia on December 15, 2009. For "reasonable proof," Michigan courts have required only that the claimant submit "a letter and a statement" detailing expenses to constitute reasonable proof. *See Williams*, 250 Mich. App. at 265, 267, 646 N.W.2d at 484, 485; *Regents of the Univ. of Mich.*, 250 Mich. App. at 737, 650 N.W.2d at 139 (2002). Under that standard, the submitted information demonstrates both the fact of the loss and the amount of the loss, and certainly provides more detail than a mere letter from counsel and statement of expenses from the provider found sufficient in those decisions.

The adjuster's notes in Encompass's claim file indicate satisfaction with the information presented, at least as to the validity of the medical bills submitted by the treating facilities. There can be no doubt that Philadelphia was equally satisfied: it actually paid all the bills in full, eventually. It appears that the true reason for the delay in payment by both insurers was a potential dispute over priority. Neither defendant acknowledges that reason as the genuine cause for the delay, presumably because they are both aware that Michigan law discourages payment delays based on priority disputes.

> [W]henever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of

-13-

> subrogation. This resolution permits the insured person to receive prompt payment
> while the insurers thereafter dispute their liabilities.

*Allstate Ins. Co. v. Citizens Ins. Co. of Am.*, 118 Mich. App. 594, 603-604, 325 N.W.2d 505, 509 (1982) (citations omitted).

The Court finds that Philadelphia received reasonable proof of the fact and the amount of the loss from the plaintiffs on December 15, 2009, and therefore payment became overdue 30 days later. Philadelphia must pay 12% interest up to the date the payments were made in July and August 2010, respectively. Encompass received reasonable proof of the fact and amount of loss in April 2009. Payment was overdue 30 day later. Encompass argues that ultimately it was not found liable for the PIP payments, so it should not be found liable for the penalty interest. That argument ignores the fact that when reasonable proof was presented to it, there was no other insurer in the picture at the time. The file notes do not reflect any suspicion that another insurer may have been on the risk until June 2009. The proper course of action for Encompass was "to pay the claim and sue the other [insurer] in an action of subrogation." *Ibid.* Encompass, therefore, is liable for penalty interest from the point when the claim submitted to it became overdue up to the time when the claim was submitted to Philadelphia and became overdue.

The plaintiffs seek $19,884.15 in penalty interest from Philadelphia for the initial claim and $21,719.61 from Encompass for the initial delay until the date Philadelphia formally admitted its liability. *See* Br. in Support of Pl.'s Mot. Summ. J., Ex. T, Philadelphia Interest Chart, Ex. U, Encompass Interest Chart. The defendants do not dispute these amounts, only their obligation to pay them. The Court finds that the plaintiffs are entitled to penalty interest in these amounts under Michigan Compiled Laws § 500.3142.

### B. Attorney's fees

-14-

To recover attorney's fees under Michigan Complied Laws § 500.3148(1), the PIP claim must be overdue, and the insurer's refusal to pay or delay in payment must be "unreasonable." *Moore v. Secura Ins.*, 482 Mich. 507, 517, 759 N.W.2d 833, 839 (2008). An initial refusal or delay by the defendant in paying benefits creates a rebuttable presumption of unreasonableness, and the defendant then has the burden of justifying its refusal or delay. *Univ. Rehab. Alliance, Inc. v. Farm Bureau Gen. Ins. Co. of Mich.*, 483 Mich. 955, 956, 763 N.W.2d 908, 908 (2009) (citing *Ross v. Auto Club Group*, 481 Mich. 1, 11, 748 N.W.2d 552, 558 (2008)). Courts have held that an insurer does not unreasonably refuse or delay payment when "the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross*, 481 Mich. at 11, 748 N.W.2d at 558; *Moore*, 482 Mich. at 520, 759 N.W.2d at 840.

As with penalty interest, payment delay resulting from a priority dispute does not render the delay "reasonable" under section 3148(1). *Regents of the Univ. of Mich.*, 250 Mich. App. at 737, 650 N.W.2d at 139 (holding that "when the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits" (citing *Darnell v. Auto-Owners Ins. Co.*, 142 Mich. App. 1, 12, 369 N.W.2d 243, 248 (1985); *Bach v. State Farm Mut. Auto. Ins. Co.*, 137 Mich. App. 128, 132, 357 N.W.2d 325, 326 (1984); *Kalin v. DAIIE*, 112 Mich. App. 497, 316 N.W.2d 467 (1982))); *see also Kalin*, 112 Mich. App. at 510, 316 N.W.2d at 474 ("A claimant who is clearly entitled to no-fault benefits should not be forced to hire an attorney merely because the circumstances of his accident create problems of priority among insurers.").

The defendants argue that the plaintiffs were the ones who caused the delay by submitting the claims for PIP benefits to the wrong insurer. They also contend that the plaintiffs had an obligation to submit their claims to the Michigan assigned claims facility and let that state agency

-15-

sort out coverage questions.  Neither of these arguments is compelling, as they both derive from the discredited idea that priority disputes justify delay in payment.

The defendants advance another argument in support of the reasonableness of their conduct: they did not receive sufficient proof to dispel their genuine factual uncertainty over the validity of the claim, or at least its amount.  They contend that factual issues delayed their payments because they were unable to determine, based on the plaintiffs' submissions, whether the expenses were reasonable, necessary, and incurred.  However, the defendants are unable to point to any evidence in the record indicating any factual uncertainty before the summary judgment motions were filed. Instead, defense counsel's initial communications with plaintiff's counsel suggested a priority dispute; they do not reference any factual issues with the plaintiffs' submissions.  Neither Encompass's nor Philadelphia's claim files indicate the need for additional materials.  In fact, Philadelphia's claim file authorizes payment on several dates.  The fact that Philadelphia sent the plaintiffs' submissions to a third-party reviewer may indicate some lack in the factual records. However, Raymond Nordo, Philadelphia's examiner, testified that he customarily sends claims to third-party reviewers.  Philadelphia argues in extensive detail about the stages of investigation it undertook, but points to no evidence in the record to support the contention that facts were lacking. The lack of any reference to factual uncertainty at any point in the record, the defendants' failure to request any additional records, and their failure to point to any evidence of factual uncertainties in the record defeats their argument.  The defendants' contention that a *bona fide* fact issue on the validity of the claims is nothing more than a post-hoc rationalization for delaying payment.

Finally, the defendants argue that they are unable to distinguish the expenses related to the accident from those incurred as a result of the victim's pre-existing mental health condition.

-16-

However, *Griffith ex rel. Griffith v. State Farm Mut. Auto. Ins. Co.*, 472 Mich. 521, 697 N.W.2d 895 (2005), and *Hoover v. Mich. Mut. Ins. Co.*, 281 Mich. App. 617, 761 N.W.2d 801 (2008), suggest that the Court should consider compensable all those expenses that were not incurred but for the accident, including those issues exacerbated by the individual's pre-existing conditions and life status. *Griffith*, 472 Mich. at 537-39, 697 N.W.2d at 904-05; *Hoover*, 218 Mich. App. at 628, 761 N.W.2d at 808.

The amount of attorney's fees under section 3148 is determined by weighing several factors laid out in *Wood v. DAIIE*, 413 Mich. 573, 588, 321 N.W.2d 653, 661 (1982):

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

Plaintiffs' counsel have attached their detailed billing statement and declarations detailing their efforts on this case and their skill and experience. Plaintiffs counsel assert that they have expended 430 hours on this case, including 200 hours total for the following tasks: responding to the defendants' dispositive motions and replying to the defendants' responses, responding to discovery motions, preparing for and attending motion hearings, preparing for and attending the deposition of Philadelphia's claim adjuster. The total attorney's fees award requested by plaintiffs' counsel is $147,265.50, along with $3,394.19 in costs.

Mr. Schreier spent 265.12 hours on the case and requests compensation at an hourly rate of $400, totaling $106,048. Mr. Schreier graduated from the University of Michigan Law School and has been practicing in the field of civil litigation (including civil rights, governmental liability, and Michigan No-Fault cases) for over 23 years, with a large percentage of the last five and a half years focused on Michigan No-Fault cases. He is the Vice-President of Miller & Tischler, P.C., and has

-17-

attached declarations from attorneys at other firms attesting to the good reputation of Miller & Tischler, P.C.

Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). State Bar surveys of rates may be an appropriate guide, although they are not dispositive in establishing the market rate. *B & G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008) (citing *Gonter*, 510 F.3d at 618 & n.6 (referring to an Ohio State Bar Association survey of hourly billing rates "[a]s a point of reference")).

The defendants point to the State Bar of Michigan 2007 economics of law practice summary report, which states that the median hourly litigation billing rates for Wayne County and downtown Detroit are $200 and $210, respectively. The Grand Rapids area has the highest median hourly litigation billing rate at $237.50. The mean hourly litigation billing rates for attorneys in practice 20-29 years is $206, and the mean litigation hourly rate for attorneys with 5-9 years of experience is $184 per hour. The Michigan survey indicates the mean litigation hourly rate for attorneys with less than five years experience is $175 per hour. The fees in this case were earned between 2009 and the present, so the survey provides relevant information that is useful in determining market rates. *See Smith v. Khouri*, 481 Mich. 519, 530, 751 N.W.2d 472, 479 (2008).

The survey rates are lower than those sought by plaintiffs' counsel, but as median rates they serve as a guidepost against which to measure a reasonable rate "sufficient to encourage competent representation." *Gonter*, 510 F.3d at 618. The plaintiffs have attached the declarations of attorneys

-18-

Stanley Feldman, David E. Christensen, and Lawrence J. Acker, each of whom aver that they have received awards ranging from $300 to $450 per hour for no-fault work and that the plaintiffs' requests in this case are reasonable.  Pls.'s Mot. Summ. J. at 8; Ex. E, decl. of Stanley Feldman, at ¶¶ 10-11; Ex. F, decl. of David Christensen, ¶¶ 8-9; Ex. G, decl. of Lawrence Acker, ¶¶ 11-12, 15.

Based on the information received, the Court believes that an appropriate hourly rate for the work performed by Mr. Schreier is $300.  First-party no-fault legal work requires intimate knowledge of the statutes and decisional law, and some measure of specialization is required.  The work performed resulted in a recovery for the plaintiffs of over $400,000.  The case involved primary issues of insurance coverage and priority disputes, which are matters of some complexity. The work performed by Mr. Schreier is above average, and a fee in excess of the four-year-old median rate is appropriate.

Mr. Kelly spent 164.87 hours on the case and requests compensation at an hourly rate of $250 totaling $41,217.50.  *Id.* at 3 & n.7.  Mr. Kelly has eleven years of practice experience, including a clerkship and employment with the Michigan attorney general's office and a "prominent" insurance defense firm.  He joined Miller & Tischler, P.C., in 2009 and has focused his practice on no-fault insurance law.  Kelly likewise avers that the fees he requests are comparable to fees customarily charged in this locality and in this area of expertise.

According to the State Bar of Michigan 2007 economics of law practice summary report, the mean hourly litigation billing rates for attorneys in practice 10-14 years is $198.  Weighing the factors discussed above, the Court finds that an hourly rate of $200 for Mr. Kelly's work is appropriate.

The defendants argue that the amount of time spent on the case by the plaintiffs' lawyers was unreasonable. Encompass contends that plaintiffs' counsel failed to present evidence that they considered two sections of the no-fault insurance law that generally impose liability on a relative before an insurer before they commenced this lawsuit. Encompass also argues that the case was a mine-run coverage case that required no special knowledge by legal counsel. The defendant notes that the plaintiffs took only one deposition and the parties did not dispute which insurer was liable.

Philadelphia joins Encompass's arguments, but it says that if attorney's fees are owed, Encompass should pay them because that insurer had the claim for several months before Philadelphia was notified of its potential liability. Philadelphia also asks for an evidentiary hearing to establish the reasonableness of the fees, but the Court is satisfied with the parties' presentations and can decide the issue on the papers submitted. Philadelphia contends that it should not be liable for fees incurred before February 2010, when it was brought into the case. Finally, Philadelphia asserts that if the plaintiffs would have applied for payment with the Michigan assigned claims facility, they could have eliminated at least 300 hours in billable attorney's fees.

The Court is unpersuaded by these arguments. At its core, the dispute in this case was driven by a contest over the priority of the respective insurance companies in the obligation to pay the PIP benefits. Philadelphia was notified of the claim in December 2009 but did not make any payment until the following summer. Encompass was notified in April 2009. The delay in payment resulting from the priority dispute was not reasonable as a matter of law. The amount of attorney time generated by Mr. Schreier and his law firm was reasonable to pursue benefits to which his clients obviously were entitled. Under these circumstances, Michigan courts have held that both competing insurance companies are jointly liable for the claimant's attorney's fees under section 3148(1). *See*

-20-

*Regents of the Univ. of Mich.*, 250 Mich. App. at 741-42, 650 N.W.2d at 141; *Darnell*, 142 Mich. App. at 11, 369 N.W.2d at 247; *Kalin*, 112 Mich. App. at 509-10, 316 N.W.2d at 474.

Both defendants must share in the attorney's fees incurred by the plaintiffs in pursuing their overdue claims. The approved fees for Mr. Schreier's work amount to $79,536. The approved fees for Mr. Kelly's work amount to $32,974. Neither defendant disputes the amount of costs claimed in the amount of $3,394.19.

III.

For the reasons stated, the Court finds that there exists no dispute as to any material fact and the defendants are liable to the plaintiffs for penalty interest in their proportionate share and jointly liable for attorney's fees under the Michigan no-fault insurance law.

Accordingly, it is **ORDERED** that the plaintiffs' motion for summary judgment [dkt. #54] is **GRANTED IN PART**.

It is further **ORDERED** that defendant Encompass Insurance Company's motion for summary judgment [dkt. #52] is **DENIED**.

It is further **ORDERED** that defendant Philadelphia Insurance Company's motion for summary judgment [dkt. #63] is **DENIED**.

It is further **ORDERED** that the plaintiffs are entitled to penalty interest from defendant Encompass Insurance Company in the amount of $21,719.61.

It is further **ORDERED** that the plaintiffs are entitled to penalty interest from defendant Philadelphia Insurance Company in the amount of $19,884.15.

It its further **ORDERED** that the defendants are jointly liable to the plaintiffs for attorney's fees and costs in the amount of $115,904.19.

s/David M. Lawson

DAVID M. LAWSON
United States District Judge

Dated:   July 26, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---